IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-61437-CIV-MOORE/SIMONTON

BRADLEY SEFF,

    Plaintiff,

vs.

BROWARD COUNTY,

    Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

THIS CAUSE came before the Court upon the Parties' Cross-Motions for Summary Judgment. Plaintiff filed a Motion for Partial Summary Judgment on Liability (ECF No. 32). Defendant subsequently filed a Motion for Summary Judgment (ECF No. 35). The Motions have been fully briefed.

UPON CONSIDERATION of the Motions, the Responses, the Replies, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

### I.   BACKGROUND

This is a class action case brought by present and former employees of Broward County who incurred a $20.00 charge for declining to participate in a health questionnaire and biometric screening as part of a "wellness program." The material facts of the case are largely undisputed by the parties.[1]

---

[1] The facts herein are taken from Plaintiff's Statement of Material Facts (ECF No. 34) and Defendant's Statement of Material Facts (ECF No. 35), at 2-6.

In 2009, saddled with an aging workforce, Broward County implemented plans to address rapidly escalating healthcare costs. As a part of this initiative, the County sought ways to improve the overall health of its workforce. Edify USA, the County's healthcare consultant, recommended a "wellness program" that would encourage employees to become active in managing their own healthcare. These kinds of programs have become increasingly popular throughout the United States. They are designed to aid employees in early detection of disease, and to provide them with the tools needed to lead healthier lives.

In October 2009, Broward County adopted a wellness program as a part of its consumer-driven health plan's Open Enrollment process. The wellness program has two components: a Health Risk Assessment questionnaire and a biometric screening. The questionnaire is confidential and conducted online. The biometric screening is also confidential and requires a finger stick blood test to measure glucose and cholesterol levels. The screening may also be done through an at-home kit.

The wellness program is administered and paid for by the County's health insurer, Coventry, and participation in the wellness program is not required for health coverage. Any personal information obtained from the questionnaire and biometric screening is not disclosed to Broward County. Broward County does receive de-identified aggregate data that it may consider in creating future benefit plans. An employee who completes the program and is identified by the insurer to have one of five disease states–asthma, hypertension, diabetes, congestive heart failure, or kidney disease–is given the opportunity to participate in a disease management coaching program. Morrison Dep. 20:5-22:22 (ECF No. 37-1). After coaching, the employee is eligible to receive certain medications associated with the identified disease at no additional cost

to the employee. Id.

In 2010, the County decided to use a financial incentive to increase participation in the wellness program. Beginning June 2010, any employee who did not complete the questionnaire and undergo the screening would incur a $20.00 charge on each bi-weekly paycheck. Though the County considered giving a $20.00 credit to those who participated, it found it would be too difficult to implement and apply to the payroll system. The County suspended the surcharge on January 1, 2011.

On August 8, 2010, named Plaintiff Bradley Seff ("Seff"), a former County employee who incurred the $20.00 charge, filed a class action complaint against the County. He alleges that the County violated the Americans with Disabilities Act ("ADA" or "the Act") by requiring employees to undergo a medical examination and making medical inquiries of its employees. He seeks damages, costs, and attorneys' fees.[2] Broward County maintains it did not violate the ADA. It claims its actions are covered by the ADA's safe harbor provision, covering entities involved in insurance plans.[3] The Court finds that the program falls under the safe harbor provision of the Act and enters the following Order.

## II.     ANALYSIS

Defendant claims that it did not violate the ADA's medical examination and inquiry

---

[2] Originally Seff additionally sought declaratory, injunctive, and equitable relief, however, these reliefs were dismissed at class certification. As Seff is no longer employed by Broward County, he did not have standing to pursue declaratory, injunctive, or equitable relief. Thus, the Court dismissed these claims. See Order Certifying Class (ECF No. 24).

[3] As the actions of the County are protected by the safe harbor provision of the ADA, the Court need not address Defendant's alternative argument that the wellness program is permissible under the Act as a voluntary wellness program.

prohibition[4] because the County's wellness program falls under the insurance safe-harbor provision of the Act. The safe harbor provision is designed to protect the insurance industry from various parts of the Act. It states, in relevant part, that subchapters I through III of the ADA:

> shall not be construed to prohibit or restrict–
> . . .
> (2) a person or organization covered by this chapter from establishing, sponsoring, observing, or administering the terms of a bona fide benefit plan that are based on underwriting risks, classifying risks, or administering such risks that are based on or not inconsistent with State law;
> . . .
> [This provision] shall not be used as a subterfuge to evade the purposes of subchapter[s] I and III of this chapter.

42 U.S.C. § 12201(c). This safe-harbor applies to the medical examination and inquiry prohibition contained in subchapter I of the Act. Therefore, if the wellness program is a benefit plan like the one described in the safe-harbor provision, then the County, in its role as administrator of a benefits plan, may require a covered employee to undergo a medical examination or answer medical inquiries.

There is no question as to whether the County is an organization covered by the chapter and, as such, the first question is whether the wellness program is a "term" of a bona fide benefit plan, or is such a program itself. Plaintiff argues that the wellness program is not a term of the County health insurance plan, nor is it independently a benefit plan. Specifically, Plaintiff states that the wellness program is not a term of the County's group health plan because "whether an

---

[4] The rule states: "[a] covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A).

4

employee participated in the voluntary wellness program did not dictate whether they were eligible to receive insurance benefits under one of the different insurance plans." However, as Plaintiff argues for the greater part of his memoranda, the wellness program is not entirely optional: plan enrollees face a $20.00 surcharge for non-participation. Furthermore, an optional term does not remove that term from the scope of an overall benefits plan. For instance, many insurance policies offer a variety of optional benefits–this does not make them independent terms.

This Court views the wellness program as a term of the County's group health plan.[5] First, Coventry, the insurer, pays for and administers the program under its healthcare contract with the County. Second, only those enrolled in the County's health plan may participate in the wellness program. Moreover, in an employee handout titled "Benefits Alert: Your Benefits & You," Broward County Employee Benefit Services informed plan enrollees that "[f]or 2010, employees enrolled in one of the CDH plan [sic] will have to participate in both the Biometric Screening and online Health Risk Assessment." "Benefits Alert: Your Benefits & You," Benefits Handout (ECF 39-1). The inclusion of the wellness program on the County's benefits plan handout indicates it is a term of the County's overall group health plan.

Next, the Court must determine whether the program is "based on underwriting risks, classifying risks, or administering such risks." In the context of the ADA safe harbor provision, at least one court has defined underwriting as "generally refer[ring] to the application of the various risk factors or risk classes to a particular individual or group for the purposes of

---

[5] There is also a strong argument that the program is a bona fide benefits plan independent of the County's group health plan as it offers benefits, namely, disease coaching and medication cost waivers for certain participants.

determining whether to provide coverage." Zamora-Quezada v. HealthTexas Medical Group of San Antonio, 34 F. Supp. 2d 433, 443 (W.D. Tex. 1998). The same court defined risk classification as "refer[ring] to the identification of risk factors and the groupings of those factors which pose similar risks." Id. There is limited case law that otherwise expounds on the meaning of this language. Ordinarily, these terms collectively refer to the process of collecting information about the health of the insured in order to assess risks so the insurer may accurately establish premiums–in other words: the process of developing insurance plans. The safe harbor provision aims to protect this process. Indeed, "[t]he purpose of the safe harbor provision is to permit the development and administration of benefit plans in accordance with accepted principles of risk assessment." Barnes v. Benham Group, Inc., 22 F. Supp. 2d 1013, 1020 (D. Minn. 1998).

      The wellness program falls under the safe harbor provision because it is designed to develop and administer present and future benefits plans using accepted principles of risk assessment. The program renders aggregate data to the County that it may analyze when developing future benefit plans. The County uses this information to classify various risks and decide what type of benefits plans will be needed in the future in light of these risks. The County is thus determining what kind of coverage will need to be provided. Though it is not underwriting or classifying risks on an individual basis, it is underwriting and classifying risks on a macroscopic level so it may form economically sound benefits plans for the future. Furthermore, the wellness program is an initiative designed to mitigate risks. It is based on the theory that encouraging employees to get involved in their own healthcare leads to a more healthy population that costs less to insure. In other words, the program is based on

underwriting, classifying, and administering risks because its ultimate goal is to sponsor insurance plans that maintain or lower its participant's premiums.

The facts here are analogous to Barnes v. Benham Group, a Minnesota district court case that applied the safe harbor provision to the medical inquiry prohibition. 22 F. Supp. 2d 1013. In Barnes, the employer defendant required employees to answer medical questions on an insurance application for an insurance broker to give to three bidding insurance providers. Id. at 1017. The insurance providers would use this information to assess risks and establish premium prices for the company's group health plan. Id. Employees who did not complete these forms were ineligible to participate in the group health insurance. Id. When the plaintiff employee refused to sufficiently answer further questions for the chosen insurance provider or sign the waiver, he was fired for insubordination. Id. On a summary judgment motion, the district court held that the employer's actions fell within the ADA's safe harbor provision. Id. at 1020. Similarly, here, the County was acting as an employer seeking to gather information that would be used to design future benefit plans for its employers. Only the insurance provider received confidential medical information derived from the questionnaire and screening. Like the company in Barnes, Broward County acted to solicit medical information from its employees with a view toward assessing risks. Such inquiries, when not pretextual, are permissible under the safe harbor provision of the ADA. Moreover, in this case, the program was more benign as the employee only faced a $20.00 sanction for non-participation, as opposed to being ineligible for coverage.

Plaintiff would have the Court believe that Broward County developed this wellness program, not for managing risks, but out of some sense of altruism–that it is based solely on the

County's wish to keep employees healthy. Broward County also states that it implemented the wellness program, in part, to get employees involved in managing their own health. Ultimately, Broward County initiated this program for financial reasons. An employee's health is of great economic importance to an employer. When an employer offers employees healthcare plans, the employer takes on extra costs associated with high numbers of insurance claims. This is especially the case in areas such as Broward County which has an aging population and increased incidents of claims. It is the economic loss suffered by employers that spurs the development of these programs, not some beneficent wish for its employees to be healthy. Thus, to the extent Plaintiff argues the wellness program is not based on insurance and risk assessment principles, but some independent desire for a healthy workforce, the Court does not agree.

Finally, Plaintiff can point to no Florida law that is inconsistent with the program, nor does the Complaint allege any sort of subterfuge to evade the purpose of the Act. The purpose of the ADA is "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b). Though Plaintiff brings this claim under the ADA, it is hard to see how the wellness program relates to discrimination in any way. In fact, the program is enormously beneficial to all employees of Broward County–disabled and non-disabled alike. It is clear to this Court that the wellness program is not a subterfuge: it was not designed to evade the purpose of the ADA. Rather, it is a valid term of a benefits plan that falls within the ambit of the ADA's safe-harbor provision.

Thus, summary judgment for Broward County is warranted.

III.  CONCLUSION

For the foregoing reasons, it is hereby

ORDERED AND ADJUDGED that Defendant Broward County's Motion for Summary Judgment (ECF No. 35) is GRANTED. It is further

ORDERED AND ADJUDGED that Plaintiff Bradley Seff's Motion for Partial Summary Judgment is DENIED.

All claims against Defendant Broward County are DISMISSED WITH PREJUDICE. The Clerk of Court is directed to CLOSE this case. All pending motions are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this 11th day of April, 2011.

**K. MICHAEL MOORE**

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc: All counsel of record